# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) <br> *ex rel.* **JAMIE BEAUDIN** ) <br> c/o Cornerstone Law Firm ) <br> 8350 N. St. Clair Ave, #225 ) <br> Kansas City, MO 64151 ) <br> ) <br> Relator, ) <br> ) <br> v. ) <br> ) <br> **QUICK MED CLAIMS, LLC,** ) <br> a Delaware Limited Liability Company, ) <br> *Resident Agent:* ) <br> CSC-Lawyers Incorporating Service ) <br> Company, ) <br> 221 Bolivar Street ) <br> Jefferson City, MO 65101 ) <br> ) <br> Defendant. ) | Case No.: <br><br> **FILED IN CAMERA AND UNDER SEAL** <br><br> **REQUEST FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW the United States of America, by and through qui tam Relator Jamie Beaudin, and for its cause of action against Defendant Quick Med Claims, LLC, alleges as follows:

### Preliminary Statement

1. This is an action to recover damages and civil penalties on behalf of the United States of America for violations of 31 U.S.C. §§ 3729 *et seq.*, as amended ("False Claims Act").

2. Under the False Claims Act, it is unlawful for any person to knowingly present or cause to be presented to the United States a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

3. Under the False Claims Act, it is unlawful for any person to knowingly make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

4. Any person who violates the False Claims Act is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000 for each such claim, plus three times the amount of damages sustained by the United States because of the false claim or claims.

5. Pursuant to 31 U.S.C. § 3730, Relator seeks to recover damages arising from Defendant's violations of the False Claims Act, namely for damages incurred from the false or fraudulent claims submitted or caused to be submitted by Defendant to Medicare.

## Parties and Jurisdiction

6. Relator is a citizen of the United States, and currently resides in Kansas City, Missouri.

7. Relator worked for Defendant Quick Med Claims, LLC. (hereinafter, "QMC") as an account manager from October 2015 until May 2017.

8. QMC is and was at all relevant times a Delaware limited liability company, active and in good standing in the state of Missouri, with its registered agent located at 221 Bolivar Street Jefferson City, MO 65101

9. QMC provides emergency medical transportation billing, reimbursement and financial management services, and other professional services to ambulance service companies throughout the nation.

10. Since October 2015, QMC has maintained a place of business in Platte City, Missouri.

*United States ex rel. Beaudin v. Quick Med Claims, LLC*  2 of 11
Case No._____
Complaint for Damages
Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 2 of 11

11. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 because this cause of action arises under the laws of the United States, and because Plaintiff is commencing suit on behalf of the United States.

12. This court has jurisdiction over the parties pursuant to 31 U.S.C. § 3732 because Defendant transacts business in this judicial district.

13. Venue is proper in this court pursuant to 31 U.S.C. § 3732 because Defendant transacts business in this judicial district.

14. This suit is not based upon prior public disclosures of substantially the same allegations or transactions as defined by 31 U.S.C. § 3730(e)(4)(A).

15. Relator's knowledge of the allegations and transactions herein is derived from her own efforts and labor and not based on publicly-disclosed information.

16. The statute of limitations on a False Claims Act case extends back six years from the original filing of this litigation. *See* 31 U.S.C. § 3731(b)(1).

## Background

*Medicare Reimbursement for Non-Emergent Ambulance Services*

17. Under certain conditions, Medicare pays for non-emergency ambulance services rendered to its beneficiaries.

18. Relevant to this case, Medicare-covered ambulance services are paid as a separately billed services in which the entity furnishing the ambulance service bills Part B of the program.

19. Under its various contracts with ambulance service companies, QMC facilitates the billing processes necessary for these companies to receive Medicare reimbursement for non-emergency transports rendered by the companies to beneficiaries.

*United States ex rel. Beaudin v. Quick Med Claims, LLC*  3 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 3 of 11

20. For Medicare to provide reimbursement for non-emergency ambulance services, the services rendered must have been medically necessary, i.e., the patient's medical condition at the time of transport was such that other means of transportation would jeopardize his or her health. *See* 42 C.F.R. § 410.10 *et seq*.

21. To receive payment for services rendered, Medicare requires service suppliers to submit claim forms in which the provider furnishes and certifies to certain information on the form, including the identity of the patient, the provider number, the procedure code number, and a brief narrative explaining the diagnosis and the medical necessity for the service rendered.

22. In submitting the claim to Medicare for payment, the submitting provider certifies that the services in question were medically necessary for the health of the patient.

23. In submitting the claim for payment, the ambulance service supplier certifies that the services in question were medically indicated and necessary for the health of the patient.

24. In almost all cases involving non-emergency ambulance transports, Medicare also requires service suppliers to obtain a Physician Certified Statement ("PCS") from the beneficiary's physician certifying that the ambulance service in question was medically necessary. *See* 42 C.F.R. § 410.40.

25. Aside from the claim form itself, ambulance service suppliers are not required to submit additional documentation to Medicare for billing purposes, but documentation such as the PCS must be kept on file and available upon request by Medicare as evidence of the medical necessity of the services. 42 C.F.R. § 410.40.

**Factual Allegations Common to all Counts**

*United States ex rel. Beaudin v. Quick Med Claims, LLC*    4 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 4 of 11

26. Relator is a former employee of MedServ Patient Accounts, where she worked for approximately five years before QMC acquired the company in October 2015.

27. Between October 2, 2015, and May 2017, Relator worked as an account manager at QMC's location in Platte City, Missouri.

28. For non-emergent ambulance transports, QMC's standard practice directs ambulance personnel to complete a Patient Care Report ("PCR").

29. The PCR's purpose is to describe in detail the medical condition of the patient and the services he or she received.

30. Once complete, the PCR is sent to a QMC billing specialist, who reviews the PCR and determine whether the services rendered were medically necessary based on the information provided, which in turn dictates whether the claim should be submitted to Medicare for reimbursement.

31. If a QMC billing specialist determines that the PCR contains sufficient information to establish the services rendered were medically necessary, QMC contacts the patient's provider and requests a PCS to corroborate the medical necessity of the services.

32. In the meantime, a bill to Medicare is generated but remains idle in QMC's computer system for twenty-one days.

33. After the twenty-one days expire, QMC's computer system is designed to automatically forward the claim to Medicare for payment—regardless of whether the requested PCS had been completed at that point.

34. In this manner, if a QMC billing specialist requests a PCS for any particular claim, the corresponding bill for services is always submitted to Medicare.

*United States ex rel. Beaudin v. Quick Med Claims, LLC*    5 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 5 of 11

35. At all times relevant, Amber Lesko was a billing specialist employed by QMC and worked at its Platte City, Missouri location.

36. From approximately January 2016 until October 2016, Ms. Lesko was responsible for processing claims for nonemergency ambulance services rendered to Medicare beneficiaries by Cole County Emergency Management Services (hereinafter, "Cole County EMS") and Regional Emergency Medical Services Authority d/b/a Buchanan County EMS (hereinafter, "Buchanan County EMS").

37. From January 2016 until October 2016, Ms. Lesko, on average, processed twenty five (25) non-emergent Medicare claims per day on behalf of Cole County EMS and Buchanan County EMS.

38. In October 2016, Relator discovered that Ms. Lesko processed each PCR as if the services rendered were medically necessary.

39. Upon speaking with Ms. Lesko, Relator learned that Ms. Lesko did not review any PCRs to verify whether they involved services that were medically necessary.

40. Instead, Ms. Lesko indiscriminately submitted a PCS request for *every* non-emergent ambulance transport rendered to a Medicare beneficiary and therefore, after twenty-one days, the bill was submitted to Medicare for reimbursement.

41. When Relator discovered the nature of Ms. Lesko's billing practices, she studied a sample of twelve claims processed by Ms. Lesko and ultimately submitted to Medicare for reimbursement.

42. From her sample study, Relator determined that the corresponding PCRs indicated that only four of the twelve claims (33%) submitted to Medicare involved services that were medically necessary.

*United States ex rel. Beaudin v. Quick Med Claims, LLC*  6 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 6 of 11

43. The remaining eight claims that were submitted for payment were false in that they did not involve services that were medically necessary.

44. In addition, Relator noted that Medicare had remitted payment for the eight false submissions.

45. Upon noticing Ms. Lesko's billing errors in October 2016, Relator contacted QMC's compliance office in Pittsburgh, Pennsylvania, and told the Director of Compliance, Mollie Troy, that Ms. Lesko had been incorrectly processing all Medicare claims as if they were medically necessary and as a result, Medicare had erroneously remitted payment for many claims that were not legally reimbursable.

46. Around November 2016, Ms. Troy confirmed Relator's findings and noted that upon her own investigation, she had found a "large amount" of errors associated with Ms. Lesko's Medicare billing practices.

47. Despite being aware of Ms. Lesko's false billing practices, QMC failed to notify Medicare of the same.

48. Between November 2016 and April 2017, Relator sent multiple emails to Ms. Troy, Michael Lewis (QMC's Chief Executive Officer), Scott Powell (QMC's Chief Operating Officer) and Christina Conroy (Relator's direct supervisor), noting the importance of contacting Medicare about the payments remitted as a result of Ms. Lesko's false billing practices.

49. Ms. Conroy—on multiple occasions—told Relator that she did not want to inform Medicare of any type of noncompliance because she feared Medicare would conduct a full-fledged audit of QMC's accounts.

*United States ex rel. Beaudin v. Quick Med Claims, LLC*  7 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 7 of 11

50. Under information and belief, as of this date, QMC has not notified Medicare of the potentially vast number of false claims submitted by Ms. Lesko to Medicare for reimbursement between January 2016 and October 2016.

### COUNT I
### Violation of 31 U.S.C. § 3729(a)(1)(A)
### Submitting False or Fraudulent Claims for Payment

51. Relator re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

52. From approximately January 2016 to October 2016, QMC knowingly presented or caused to be presented false claims for payment to Medicare.

53. The claims in question were false or fraudulent because they involved services rendered to Medicare beneficiaries that were not medically necessary.

54. Between January 2016 and October 2016, QMC falsely certified that all of the claims processed and submitted to Medicare by Ms. Lesko were for services that were medically necessary.

55. At all times relevant, QMC had actual knowledge of the false claims; or acted in deliberate ignorance of the falsity of the information; or acted in reckless disregard of the falsity of the information contained in said claims.

56. As a result of the foregoing, QMC is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104-410) for every claim submitted to Medicare that did not involve services that were medically necessary, plus 3 times the amount of damages which the Government sustained because of QMC's acts.

*United States ex rel. Beaudin v. Quick Med Claims, LLC*  8 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 8 of 11

57. Pursuant to 31 U.S.C. § 3730, Relator is entitled to reasonable costs, expenses, and attorneys' fees incurred as a result of this action.

WHEREFORE, Relator requests that the Court enter judgment against QMC for civil penalties arising from the aforementioned violations of the False Claims Act, including Relator's reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as allowed by the False Claims Act and as the Court deems just and proper.

## COUNT II
## Violation of 31 U.S.C. § 3729(a)(1)(G)
## Knowingly Concealing an Obligation to Pay Money to the Government

58. Relator re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

59. QMC knowingly concealed its obligation to reimburse the government for all payment remitted by Medicare to QMC as a result of each false claim QMC submitted between January 2016 and October 2016.

60. At all times relevant, QMC had actual knowledge of the false claims; or acted in deliberate ignorance of the falsity of the information; or acted in reckless disregard of the falsity of the information contained in said claims.

61. As a result of the foregoing, QMC is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104-410) for every claim submitted to Medicare that did not involve services that were medically necessary, plus 3 times the amount of damages which the Government sustained because of QMC's acts.

*United States ex rel. Beaudin v. Quick Med Claims, LLC*        9 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 9 of 11

62. Pursuant to 31 U.S.C. § 3730, Relator is entitled to reasonable costs, expenses, and attorneys' fees incurred as a result of this action.

WHEREFORE, Relator requests that the Court enter judgment against QMC for civil penalties arising from the aforementioned violations of the False Claims Act, including Relator's reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as allowed by the False Claims Act and as the Court deems just and proper.

## Demand for Jury Trial and Designation of Place of Trial

Relator requests a trial by jury in the United States District Court in the Western District of Missouri on all counts and allegations of wrongful conduct alleged in this Complaint.

        Respectfully Submitted,

        CORNERSTONE LAW FIRM

By: /s/ Joshua P. Wunderlich
     Joshua P. Wunderlich Mo. Bar #64254
     j.wunderlich@cornerstonefirm.com
     8350 N. St. Clair Ave. Suite 225
     Kansas City, Missouri 64151
     Telephone      (816) 581-4040
     Facsimile       (816) 741-8889

     ATTORNEY FOR RELATOR

*United States ex rel. Beaudin v. Quick Med Claims, LLC*  10 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 10 of 11

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of April 2018, a true and correct copy of the foregoing *Complaint for Damages*, along with a true and correct copy of Relator's *Disclosure Statement*, was sent via certified mail addressed to:

U.S. Attorney's Office
Attn: Civil-process clerk
Charles Evans Whittaker Courthouse, Room 5510
400 East 9th Street
Kansas City, MO 64106

*and*

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

/s/ Joshua P. Wunderlich
Attorney for Relator

*United States ex rel. Beaudin v. Quick Med Claims, LLC*     11 of 11
Case No._____
Complaint for Damages

Case 5:18-cv-06044-DGK   Document 1   Filed 04/11/18   Page 11 of 11